UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK                    **FOR PUBLICATION**
----------------------------------------------------------------x
In re:

                                                Case No. 808-73335-reg
HAFIZUR RAHMAN,
                                                Chapter 13
                              Debtor.
----------------------------------------------------------------x

## MEMORANDUM DECISION

Before the Court is an objection by the Chapter 13 Trustee ("Trustee") to confirmation of

the Debtor's Chapter 13 plan pursuant to 11 U.S.C. §1325(b).  The Trustee argues that the

Debtor has failed to commit all of his "projected disposable income" toward repayment to

unsecured creditors.  The basis of the Trustee's position is that on Form B22C the Debtor has

taken expenses for debt payments to two secured lenders for collateral which the Debtor's

Chapter 13 plan provides will be surrendered.[1]  The United States Trustee argues in support of

the Trustee's objection.  The Debtor argues that the scheduling of the secured debt expenses are

appropriate.  It is the Debtor's position that the applicable statutes require the Court to allow him

to deduct post-petition payments that are "scheduled as contractually due" to a secured creditor

post-petition even if the Debtor's Plan clearly provides that it is his intent to surrender the subject

property and he does not intend to make any of the scheduled payments.  For the reasons that

follow, the Court holds that pursuant to 11 U.S.C. §§1325(b) and 707(b)(2), the Court must look

at a debtor's stated intentions of record as they exist on the date of confirmation to determine

---
[1]

This Memorandum Decision addresses only the Trustee's challenge to the Debtor's "projected
disposable income" calculations.  The remainder of the Trustee's objections to confirmation will
be addressed at a subsequent hearing.

what expenses are "reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor" during the Chapter 13 plan. Therefore, the Trustee's objection is sustained.

### *Background*

The Debtor, Hazifur Rahman (the "Debtor"), filed a Chapter 13 petition on June 25, 2008. Schedule A of the Debtor's petition shows that on the date of the bankruptcy filing, the Debtor was the fee owner of two parcels of residential real property: (1) a one family house at 14 Gooseberry Lane, Islandia, New York with value of $525,000, encumbered by a $437,099.98 mortgage (the "Islandia Property"), and (2) a one family house at 8 Franklin Avenue, Selden, New York with a value of $250,000 encumbered by a $358,700.75 mortgage (the "Selden Property"). The Islandia Property is the Debtor's primary residence. The schedules also reflect that on the date of the bankruptcy filing, the Debtor owned two motor vehicles: (a) a 1999 Nissan Maxima (the "Maxima") with a value of $2,250, encumbered by $5,667.05 lien, and (b) a 2002 Lexus RX 300 with a value of $7,900, encumbered by a $16,811.90 lien.

On November 17, 2008, the Debtor filed a Fourth Amended Chapter 13 plan (the "Plan") which proposes to retain the Islandia Property and the 2002 Lexus, and abandon the Debtor's interests in both the Selden Property[2] and the Maxima. Consistent with his stated intention to

---

[2] The automatic stay was lifted by Order, dated November 4, 2008, permitting the Debtor's secured lender to proceed with foreclosure of the Selden Property. The motion for relief from stay stated that the mortgage on the Selden Property was in default from July 2008. The Debtor did not oppose the lift stay motion.

abandon the Selden Property and the Maxima, the Debtor did not include these secured debt payments on Schedule J.

On November 17, 2008, the Debtor also filed a Third Amended Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B22C" or the "Means Test"), which deducts from the Debtor's current monthly income, the monthly secured debt repayments on both real properties and both vehicles.[3] The monthly deduction for the mortgage on the Selden Property is $2,624.22, and the monthly deduction for the loan on the Maxima is $94.45. (See Line 47(d) and (e)).[4] The net result of the Debtor's calculations on Form B22C is that his monthly disposable income is only $32.80. Nonetheless, the Debtor's Plan proposes to pay $485 per month from July 2008 through September 2008, and $577 per month from October 2008 through June 2013. According to the Plan, the total payout of approximately $34,000 will result in about a 19% pro rata distribution to unsecured creditors.[5]

On November 20, 2008, the Trustee appeared in opposition to confirmation of the Debtor's proposed Plan raising a variety of issues, including an objection to the Debtor's

---

[3]

Line 47(e) of Form B22C refers to a "1999 Nissan *Sentra.*" The Court assumes this is a typographical error.

[4]

Despite taking the deductions on Line 47 (Subpart C) for future payments on the secured claims for both real properties and both vehicles, the Debtor took only the IRS Standard Deductions in Subpart A for one car, the Lexus, and one real property, the Islandia Property. (See Lines 25B and 28).

[5]

In his objection to confirmation, the Trustee points out that although the Debtor's proposed payout is enough to pay 19% of all filed *unsecured claims*, there have been priority and secured arrears claims filed such that a 19% payout would require the Debtor's plan payments to exceed $80,000. If not resolved, the Court will address this issue at an adjourned confirmation hearing.

inclusion on Line 47 of Form B22C of secured debt payments for property that the Debtor intends to abandon.[6]  In a memorandum of law subsequently filed by the Trustee, he urges the Court to find that a Chapter 13 debtor may not deduct from current monthly income, monthly secured debt payments on account of collateral for which the debtor has stated an intention to abandon or surrender, *i.e.*, where the debtor has stated his intention not to make the payments over the life of the plan.  *See, e.g.*, *In re Koch*, 391 B.R. 230 (Bankr. N.D.N.Y. 2008); *In re Holmes*, 395 B.R. 149 (Bankr. M.D. Fla. 2008); *In re Van Bodegom Smith*, 383 B.R. 441 (Bankr. E.D. Wis. 2008); *In re McPherson*, 350 B.R. 38 (Bankr. W.D. Va. 2006); *In re Love*, 350 B.R. 611 (Bankr. M.D. Ala. 2006).  To find otherwise, the Trustee argues, is contrary to the language of the statute and would violate the "intent, meaning and purpose" of Section 1325 of providing for all of a debtor's "projected disposable income" to be committed to repayment of debts.

Section 1325 of the Bankruptcy Code provides that if the trustee or the holder of an allowed unsecured claim objects to confirmation, the court may not approve the plan unless,

. . . as of the effective date of the plan--

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

---

[6]

On September 2, 2008, the Trustee filed a motion to dismiss the Debtor's bankruptcy case for, among other things, failure to provide the trustee with certain mandatory disclosure documents, *see* E.D.N.Y. LBR 2003-1, failure to propose a plan which pays all filed claims and failure to file an accurate means test.  The motion to dismiss has been adjourned from time to time and is still pending before the Court.

11 U.S.C. § 1325(b)(1)(B) (emphasis added).

First, the Trustee argues that the term "projected disposable income" is a forward-looking concept and as such the expenses claimed on Form B22C must be expenses that the Debtor intends to actually pay post-confirmation.  The Trustee points out that the term "disposable income" is defined in Chapter 13 as "current monthly income received by the debtor [ ] less amounts reasonable necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor."  11 U.S.C. §1325(b)(2)(A)(i).  For the above-median income debtor, as we have in this case, the "amounts reasonably necessary to be expended" must be calculated under 11 U.S.C. §707(b)(2)(A) and (B).  The Trustee argues that by adding the modifier "projected" to "disposable income" in Section 1325(b)(1)(B), Congress intended that the Section 707(b)(2) expenses be qualified as those that are "reasonably necessary to be expended."  This, the Trustee argues, is intended to be a forward-looking concept.  As such, the Trustee argues that secured debt payments on property being surrendered should not be allowed because it is not "reasonably necessary to be expended" during the life of the Plan.  *See e.g., In re McPherson*, 350 B.R. at 44-45 ("Payments that a debtor does not propose to make during the pendency of the plan and that a debtor is not required to make under the plan cannot be said to be reasonably necessary for the support of that debtor."); *In re Love*, 350 B.R. at 613 ("The term 'projected' contemplates forward looking or future oriented approach. One would not project or anticipate that a payment would be made on a secured indebtedness where the collateral had been returned.").

The Trustee also focuses on the phrase "scheduled as contractually due" which is found in both Section 707(a) and Form B22C.  The Trustee argues that the phrase "scheduled as

contractually due" should be read to mean "scheduled" as per the Debtor's Schedule J (Expenses). Thus since this Debtor did not list these payments on Schedule J they are not "scheduled as contractually due" for purposes of calculating disposable income. *See In re Harris*, 353 B.R. 304 (Bankr. E.D. Okla. 2006). The contrary view is that "scheduled as contractually due" should be interpreted to mean monthly payments scheduled pursuant to the contract. The Trustee argues that this interpretation of the statute could result in the entire secured obligation being considered to be "contractually due" on the date of the petition in a situation where the debt was defaulted and accelerated pre-petition. Alternatively, upon acceleration of a secured obligation, technically, there is no payment "contractually due" post-petition and therefore a debtor would not have to include any amount for such secured debt repayment. This, he argues, would be an absurd result.[7]

The Office of the United States Trustee (the "UST") filed a memorandum of law in support of the Trustee's objection to confirmation. The UST's position mirrors that of the Trustee on the issue of whether Form B22C should include repayment of secured debt for collateral which the Debtor has stated an intention to surrender. The UST asserts that the Plan should not be confirmed because it does not commit all of the Debtor's "projected disposable income" toward repayment of his debt over the life of the Plan. In addition to the Trustee's legal arguments, the

---

[7]
The Trustee also questions whether the Debtor is proceeding in good faith in this bankruptcy case. He alleges that the Debtor only sought to deduct the secured debt repayments for the Selden Property and the Maxima *after* he was forced to increase his current monthly income as a result of the Trustee's review of the Debtor's bank statements. The Trustee believes that the Debtor included the deductions in his Fourth Amended Chapter 13 Plan only in order to offset the increased income figure. The Trustee cites to this and other deficiencies in the Debtor's case as evidence of bad faith. The issue of the Debtor's good faith and other confirmation issues will be addressed at a subsequent hearing.

UST also argues that Section 707(b)(2)(A)(iii) dictates that deductions for secured debt be for amounts "scheduled as contractually due for each month of the 60 months *following* the date of the petition." The word "following" is defined as next in order of time or in the future. The UST argues that this indicates that Congress intended only that deductions be taken for payments that will be actually made to creditors going forward.

In response, the Debtor argues that the "means test calculation is a mechanical formula that provides a snapshot of the Debtor's finances on the date the petition was filed." Under the Debtor's reading of the statute, a debtor should be permitted to deduct secured debt payments from monthly income if such payments are owed on the petition date, regardless of the debtor's intention to abandon the collateral. *See In re Thomas*, 395 B.R. 914 (B.A.P. 6th Cir. 2008); *In re Quigley*, 391 B.R. 294 (Bankr. N.D. W. Va. 2008); *In re Turner*, 384 B.R. 537 (Bankr. S.D. Ind. 2008); *In re Osborne*, 374 B.R. 68 (Bankr. W.D.N.Y. 2007); *In re Kogler*, 368 B.R. 785 (Bankr. W.D. Wis. 2007); *In re Longo*, 364 B.R. 161 (Bankr. D. Conn. 2007). The Debtor acknowledges that such a mechanical application of the statute could lead to unfair results, but it is not for the court to rewrite the statute.

### *Discussion*

In this case, the Court is called upon to decide whether secured debt repayment expenses are properly deducted from a debtor's monthly income where the debtor indicates his intention in the Chapter 13 plan to surrender the collateral and by implication stop making those payments. In other words, do Sections 1325(b) and 707(a) read together permit a debtor to, on one hand, file a

plan stating an intention to stop making certain secured debt payments, and on the other hand, use those expenses to reduce his monthly disposable income to be repaid to unsecured creditors?  The Debtor argues that the statute requires the Court to take a "snapshot" of his secured debt expenses as of the date of the petition regardless of his stated intention not to pay those expenses.  The Trustee urges the Court to adopt a future-oriented approach which looks beyond the date of the petition.

The Court believes that any analysis of expenses must consider the facts and circumstances as of the confirmation date and must give weight to the debtor's intentions as stated in the Chapter 13 plan.  It is the Debtor that has drafted and submitted for this Court's approval the subject Plan – the very Plan which provides that the Debtor will surrender the property and make no future payments to the secured creditor.  This intent requires no measure of analysis, it is clearly set forth within the Plan.

Section 1325 of the Bankruptcy Code provides that if the trustee or the holder of an allowed unsecured claim objects to confirmation, the Court may not approve the plan unless,

. . . as of the effective date of the plan--

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's *projected disposable income to be received in the applicable commitment period* beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B) (emphasis added).

"Projected disposable income" is not a defined term under the Bankruptcy Code.  However, prior

to the October 2005 enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), a debtor's projected disposable income figures were derived from actual income and expenses on Schedules I and J.  Pursuant to BAPCPA, "disposable income" is now defined as,

> . .. *current monthly income* received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less *amounts reasonably necessary to be expended*--
>
> (A)(i) *for the maintenance or support of the debtor or a dependent of the debtor*, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
>
> (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) [FN1] to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
>
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b)(2) (emphasis added).

The Code provides that for above-median income debtors,[8] as we have in this case, the "amounts reasonably necessary to be expended" under Section 1325(b)(2), shall be determined in

---

[8]

*See* 11 U.S.C. §1325(b)(3) (explaining who qualifies as an above-median income debtor).

accordance with Section 707(b)(2)(A) and (B).[9]  Section 707(b)(2)(A)(iii) deals specifically with

expense deductions for secured debt repayments.  Under this subsection, a debtor may take a

monthly deduction for the total amount of payments "scheduled as contractually due" to a secured

creditor within the 60-month period of a debtor's plan, divided by 60.  The wording of the statute

is less than clear and has been the focus of many bankruptcy court opinions.  Section

707(b)(2)(A)(iii), provides that:

> The debtor's average monthly payments on account of secured debts shall be
> calculated as the sum of--
>
> (I) the total of all amounts *scheduled as contractually due to secured creditors in
> each month of the 60 months following the date of the petition*; and
>
> (II) any additional payments to secured creditors necessary for the debtor, in filing
> a plan under chapter 13 of this title, to maintain possession of the debtor's primary
> residence, motor vehicle, or other property necessary for the support of the debtor
> and the debtor's dependents, that serves as collateral for secured debts;
>
> divided by 60.

---

[9]

In relevant part, Section 707(b)(2)(A)(ii) provides:

> (I) The debtor's monthly expenses shall be the debtor's applicable monthly
> expense amounts specified under the National Standards and Local Standards,
> and the debtor's actual monthly expenses for the categories specified as Other
> Necessary Expenses issued by the Internal Revenue Service for the area in which
> the debtor resides, as in effect on the date of the order for relief, for the debtor,
> the dependents of the debtor, and the spouse of the debtor in a joint case, if the
> spouse is not otherwise a dependent. Such expenses shall include reasonably
> necessary health insurance, disability insurance, and health savings account
> expenses for the debtor, the spouse of the debtor, or the dependents of the
> debtor. Notwithstanding any other provision of this clause, the monthly expenses
> of the debtor shall not include any payments for debts. ... In addition, if it is
> demonstrated that it is reasonable and necessary, the debtor's monthly expenses
> may also include an additional allowance for food and clothing of up to 5
> percent of the food and clothing categories as specified by the National
> Standards issued by the Internal Revenue Service.

. . .

11 U.S.C. §707(b)(2)(A)(iii) (emphasis added).

The requirements of Section 707(b)(2)(A)(iii)(I) are implemented in practice through Line 47 of

Form B22C.[10]

*Analysis*

As the Court previously stated in its recent decision of *In re Almonte*, 397 B.R. 659

(Bankr. E.D.N.Y. 2008), any statutory analysis must always start with the clear meaning of the

---

[10] As part of his substantive argument, the Trustee points out an unfortunate discrepancy between Line 47 and the provision in the Bankruptcy Code that the form was intended to track. When determining an above-median income debtor's reasonable expenses, Section 707(b)(2)(A)(iii)(I) permits a debtor to deduct from his current monthly income "the total of all amounts *scheduled as contractually due* to secured creditors in *each month of the 60 months following the date of the petition* . . . divided by 60." 11 U.S.C. § 707(b)(2)(A)(iii)(I) (emphasis added). Line 47 of Form B22C, entitled "Future payments on secured claims," was intended to embody Section 707(b)(2)(A)(iii)(I) in the official forms. Line 47 provides that the "Average Monthly [secured debt] Payment is the total of all amounts scheduled as contractually due to each Secured Creditor in the 60 months following the filing of the bankruptcy case, divided by 60."

According to some interpretations, the wording of Form B22C and Section 707 conflict because Form B22C does not refer to "each month" of the 60-month period. Form B22C simply refers to "the 60 months." Arguably, the use of the words "each month" in Section 707 requires an analysis of each separate month of the plan period, while Form B22C's failure to separate out "each" month has lead some to find that the 60 months is an indivisible period of time. To the extent that the wording of the form and the statute conflict, the Trustee argues that the statute must prevail. The court agrees. The Official Forms are promulgated by the Judicial Conference of the United States. *See* Fed. R. Bankr. P. 9009. The Official Forms do not have the force of substantive law and if the forms and the statute conflict, it is the statute which must control. *See* Fed. R. Bankr. P. 9009 ("The forms shall be construed to be consistent with these rules and the Code."). Despite the failure of Line 47 of Form B22C to replicate the exact language of Section 707(b)(2)(A)(iii)(I), the statute controls.

statute.  "If the meaning is clear then the Court has no discretion but to follow the mandates as written by Congress.  However, the Court must look beyond the statutory language when a statute is ambiguous or where specific sections seem to be at odds with each other." *Id.*  In *Almonte*, the Court found that the meaning of "projected disposable income" in Section 1325(b) is not "clear" from the statutory language as evidenced by two opposing schools of thought on the meaning of that term as it relates to the income side of the disposable income calculation, *i.e.*, the "crystal ball" versus "rear view mirror" approaches.  Ultimately, this Court adopted the crystal ball, or future-oriented, approach to the income side of the projected disposable income analysis and held:

> If a debtor's "disposable income" on Form B22C differs from the debtor's actual monthly disposable income reported on Schedules I and J, the Court may analyze the debtor's actual projected income over the life of the plan in order to avoid a result which the Court believes is inconsistent with two fundamental bankruptcy principles; that is, giving the honest but unfortunate debtor a "fresh start," and requiring a chapter 13 debtor to repay creditors what he can afford from his post-petition earnings.

In *Almonte*, the Court found that a debtor's "current monthly income" was a forward-looking concept and should not include income which the debtor would not have post-petition. The Court declined to impute to the debtor fictional income that he would not have during the course of the Chapter 13 plan.

The instant case requires the Court to decide what should properly be included on the expense side of the "projected disposable income" analysis.  As was the case with the income side of the analysis, there is currently no controlling or other caselaw authority on this issue within this District.  Two opposing schools of thought have developed in this area: the "snapshot" approach and the "future-oriented" approach.  *See In re Holmes*, 395 B.R. 149 (Bankr. M.D. Fla. 2008)

(discussing snapshot and future-oriented approaches).

The former approach requires a court to take a "snapshot" of the debtor's secured debt repayment obligations as they existed on the petition date. *See, e.g., In re Quigley*, 391 B.R. 294 (Bankr. N.D. W. Va. 2008); *In re Longo*, 362 B.R. 161 (Bankr. D. Conn. 2007); *see also In re Holmes*, 395 B.R. 149 (Bankr. M.D. Fla. 2008) (listing "snapshot" cases). Whether or not the debtor is paying these obligations or states an intention not to pay them in the future, this interpretation of the statute permits the debtor to deduct payments for secured debt obligations that existed as of the date of the petition. This analysis relies on the language of Section 707(b)(2)(A)(iii) which allows the debtor to take a secured debt repayment expense for obligations that are "scheduled as contractually due" to secured creditors during the life of the plan. Regardless of the debtor's intentions with respect to repayment of the obligation, the theory is that the obligation is still "scheduled as contractually due" and therefore the debtor can take the expense.

The future-oriented approach to disposable income interprets the statute in a manner which allows a court to look beyond the petition date to determine a debtor's secured debt expenses. *See In re Holmes*, 395 B.R. 149 (Bankr. M.D. Fla. 2008) (listing "future-oriented" cases). This approach finds support in certain forward-looking language of both Sections 1325(b) and 707(a). First, Section 1325(b)(1) requires that a debtor commit all of his "projected" disposable income "to be received" by the debtor towards repayment of unsecured debt. Use of the words "projected" and "to be received" implies that "projected disposable income" is a forward-looking concept and courts should look at a debtor's disposable income over the life of the plan. Second,

Section 1325(b)(2)'s definition of "disposable income" allows a debtor to deduct expenses for "amounts reasonable necessary *to be expended* for the maintenance or support of the debtor or a dependent of the debtor."  11 U.S.C. §1325(b)(2)(A)(I) (emphasis added).  The use of the words "to be expended" further implies that the calculation of expenses should be forward-looking.  Third, Section 707(b)(2)(A)(iii) refers to amounts "scheduled as contractually due to secured creditors *in each month of the 60 months following the petition date*..." 11 U.S.C. 707(b)(2)(A)(iii) (emphasis added).  Reference to the 60 months "following" the petition date also implies that expenses should be forward-looking.  To the extent that it is not clear that the language of Section 707 is future-oriented, one must remember that Section 707(b) is incorporated into Section 1325(b) by reference and should be read in light of that section.[11]

As in *Almonte*, the Court does not believe the statutes require a finding that recognizes "fictional expenses" any more than "fictional income."  As with the income side of the disposable income calculation, the Court finds that the expense side of the disposable income calculation is forward-looking.  That is to say, expense calculations should not be a static evaluation of a debtor's obligations as they existed on the petition date.  This does not mean that the Court has to evaluate every possible turn of events that may transpire during the 60-month plan period.  Changed facts can be addressed by a post-confirmation plan modification under Section 1329.  But rather, the Court must look at a debtor's stated intentions of record as they exist on the date of confirmation to determine what expenses are "reasonably necessary to be expended for the

---

[11] The holding in this case is limited to Chapter 13 cases and should not be read to extend to Chapter 7 means test calculations.

maintenance or support of the debtor or a dependent of the debtor" during the Chapter 13 plan. One of the main requirements in Chapter 13 is that a plan be funded with all of a debtor's disposable income, it would go against the very essence of Chapter 13 to allow a debtor to deduct an expense that he has stated he does not intend to actually pay during the life of the plan.  In this case, the Chapter 13 plan states the Debtor's intention to surrender the Selden Property and the Maxima.  Every dollar of expenses deducted from a debtor's current monthly income is another dollar which is not repaid to unsecured creditors.  Absent binding authority in this Circuit to the contrary, this Court is not prepared to adopt a reading of the statute that permits a debtor to withhold disposable income from repayment to unsecured creditors.

### *Conclusion*

For the foregoing reasons, the Chapter 13 Trustee's objection to plan confirmation based on the Debtor's expense deduction for secured payments on surrendered collateral is sustained. The Court will consider the remainder of the Trustee's objections to confirmation, including but not limited to the Trustee's good faith objection under 11 U.S.C. §1325(a)(3), at the adjourned confirmation hearing scheduled for January 29, 2009 at 9:30 a.m.

An Order consistent with this Memorandum Decision will issue forthwith.


Dated: Central Islip, New York
      January 22, 2009                **/s/ Robert E. Grossman**
                                     Robert E. Grossman
                                     United States Bankruptcy Judge